WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-17-00841-001-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Jonathan Frank Davis, | |
| Defendant. | |

The Superseding Indictment charges Defendant Jonathan Davis with conspiracy, sex trafficking, and transportation of persons to engage in prostitution. Doc. 63. Defendant has filed a motion to compel election or dismiss multiplicitous Counts Two and Three (Doc. 44)[1] and a motion to sever Count One from the remaining counts (Doc. 48). The motions are fully briefed, and the Court held a hearing on January 31, 2018. The Court will grant the first motion and deny the second.

**I.     Motion to Compel Election or Dismiss Multiplicitous Counts.**

Counts Two and Three allege violations of 18 U.S.C. § 1591(a). Doc. 63 at 6. Count Two focuses on the fact that the alleged victim, Jane Doe 1, was younger than 18 years of age. *Id.* It alleges that Defendant violated § 1591(a) when he "knowingly recruited, enticed, harbored, transported, provided, obtained, and maintained" Jane Doe 1

---

[1] Defendant's motion challenged Counts Two, Three, and Four of the original indictment. Doc. 44. The Court dismissed the original Count Three (Doc. 55), and the government subsequently secured a Superseding Indictment (Doc. 63). The new counts at issue in this motion are Counts Two and Three.

to engage in a commercial sex act, "knowing and in reckless disregard of the fact that Jane Doe 1 had not attained the age of 18 years." *Id.* Count Three focuses on the fact that force, fraud, and coercion were used to cause Jane Doe 1 to engage in prostitution. *Id.* It alleges Defendant violated § 1591(a) when he "knowingly recruited, enticed, harbored, transported, provided, obtained, and maintained" Jane Doe 1 to engage in a commercial sex act, "knowing and in reckless disregard of the fact" that this would be accomplished by "means of force, threats of force, fraud, and coercion." *Id.*

The question presented by Defendant's motion is whether the Superseding Indictment correctly asserts two separate crimes under § 1591(a), or whether the statute creates one crime that can be committed in two different ways.

**A.  Relevant Law.**

> [The Double Jeopardy Clause] has been interpreted to protect persons against successive prosecutions for the same offense after acquittal or conviction and, as relevant here, against multiple criminal punishments for the same offense. . . . Congress, of course, has the power to authorize multiple punishments arising out of a single act or transaction. The constitutional guarantee against double jeopardy merely assures that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense.

*United States v. Overton*, 573 F.3d 679, 690 (9th Cir. 2009) (internal quotation marks and citations omitted).

Thus, the question is one of "legislative authorization" – did Congress intend to create two crimes or one crime when it enacted § 1591(a)? *Id.* The parties do not cite any federal case addressing this issue under § 1591(a).

Courts in this circuit must apply "a presumption against construing statutes so as to lead to multiple punishment." *United States v. Arreola*, 467 F.3d 1153, 1157 (9th Cir. 2006) (quoting *United States v. UCO Oil Co.*, 546 F.2d 833, 837 (9th Cir. 1976)). This presumption arises from Supreme Court instructions:

> When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity. . . . It

may fairly be said to be a presupposition of our law to resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment.

*Bell v. United* States, 349 U.S. 81, 83 (1955).

With this presumption in mind, the Ninth Circuit has identified four factors to consider when deciding whether Congress has authorized one crime or two: "(1) the language of the statute itself, (2) the legislative history and statutory context, (3) the type of conduct proscribed, and (4) the appropriateness of multiple punishment for the conduct charged in the indictment." *Arreola*, 467 F.3d at 1157.

### B. *Arreola's* Four Factors.

#### 1. Language of the Statute.

Section 1591(a) wins no awards for clarity. It includes two numbered paragraphs and additional language that applies to both paragraphs:

(a) Whoever knowingly --

(1) in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or

(2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),

knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, [or] coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591.

Subsection (a)(1) applies when the defendant procures a person to engage in prostitution by the various means listed. Subsection (a)(2) applies when the defendant

benefits from a venture that has procured a person as described in (a)(1). The Ninth Circuit has held in an unpublished opinion that (a)(1) and (a)(2) identify separate crimes. *See United States v. Moss*, 379 F. App'x 651, 653 (9th Cir. 2010). Only (a)(1) is at issue in this motion.

The government contends that (a)(1) itself identifies two crimes when the language following (a)(1) and (a)(2) is considered. Doc. 53 at 3-4. The two crimes are: (1) procuring a person to engage in prostitution by force, fraud, or coercion, and (2) procuring a person under the age of 18 to engage in prostitution. *Id.* Although it is true that each of these acts is identified in the language following (a)(1) and (a)(2), and that the acts are separated by the disjunctive "or," the Court has difficulty concluding that Congress intended to make them separate crimes under (a)(1).

Congress did not set them out in separate paragraphs as it did (a)(1) and (a)(2). And if it is true that the language following (a)(1) and (a)(2) identifies two separate crimes, then both crimes presumably would apply to (a)(1) and (a)(2), creating four crimes where Congress set out only two in separate numbered paragraphs. Not likely. What is more, the language following (a)(1) and (a)(2) begins with the word "knowing." Thus, Congress states that a person violates (a)(1) when he procures a person to engage in prostitution "knowing or . . . in reckless disregard of the fact" that the person will either be made to engage in prostitution by force, fraud, or coercion or is under 18 years of age. The language establishes a knowledge requirement for the person identified in (a)(1). It seems unlikely that Congress intended this state-of-mind description to create two separate crimes that are not reflected in the wording of (a)(1). More likely, Congress intended to create a single crime that can be committed with two different forms of knowledge.

### 2. Legislative History and Statutory Context.

The parties have cited no relevant legislative history. Doc. 44 at 9; Doc. 53 at 3. It appears the history does not address the number of crimes Congress intended to create.

The statutory context does provide some insight, as will be discussed below with respect to the punishment section.

### 3. Type of Conduct Proscribed.

The Court must consider "whether the statute proscribes distinctly different kinds of conduct, or whether the proscribed conduct is regarded as falling within the conventional understanding of one crime. Where the proscribed acts merge into each other, blurring any conceptual distinctions, it is less likely that the statute creates separate offenses." *Arreola*, 467 F.3d at 1159 (internal quotation marks and citation omitted).

The Court sees distinct wrongs that Congress could have intended to punish in § 1591(a). Prohibiting sex trafficking of minors addresses a clear social evil: causing minors to engage in commercial sex to their great detriment and risk. An indispensable element of this wrong is that the victims are minors – children – who lack the intellectual, emotional, and physical maturity to withstand the perpetrator's control. Involving children in commercial sex acts can also fuel pedophilia, placing all children at greater risk.

Prohibiting sex trafficking by force, fraud, or coercion addresses a different wrong: the use of power, deception, or undue influence to entrap another human being in prostitution. It springs from a somewhat different concern than protection of minors, but addresses a serious social evil nonetheless – forcing or deceiving others into prostitution.

The Court concludes that these different wrongs could justify the creation of two separate crimes, but the question remains whether Congress intended to do so when it enacted § 1591(a). The fact that Congress could have created two crimes is not determinative.

### 4. The appropriateness of multiple punishments.

Congress did not establish multiple punishments for a person who violates § 1591. Section (b) provides:

(b) The punishment for an offense under subsection (a) is --

> (1) if the offense was effected by means of force, threats of force, fraud, or coercion described in subsection (e)(2), or by any combination of such means, or if the person recruited, enticed, harbored, transported, provided, obtained, advertised, patronized, or solicited had not attained the age of 14 years at the time of such offense, by a fine under this title and imprisonment for any term of years not less than 15 or for life; or
>
> (2) if the offense was not so effected, and the person recruited, enticed, harbored, transported, provided, obtained, advertised, patronized, or solicited had attained the age of 14 years but had not attained the age of 18 years at the time of such offense, by a fine under this title and imprisonment for not less than 10 years or for life.

18 U.S.C. § 1591.

Subsection (b)(1) appears to equate the wrongs of procuring another by force, fraud, or coercion and procuring a person younger than 14. It imposes a 15-year minimum sentence for both, and includes no suggestion that two 15-year minimums should be imposed if both conditions are met. And by providing a separate 10-year minimum in (b)(2) for procuring a person between ages 14 and 18, Congress appears to view that offense as somewhat less serious. The salient point is this: Congress lumped together in (b)(1) the penalties for the two wrongs the government claims are separate crimes – procuring by force, fraud, or coercion and procuring a minor. If Congress had viewed them as separate crimes, it likely would have established separate penalty provisions.

### 5. Conclusion.

Two of *Arreola* factors suggest that Congress did not intend to create separate crimes (the language of the statute and the punishment provisions), one could support the imposition of two separate crimes (the type of conduct proscribed), and one is unhelpful (the legislative history). In other words, the statute is ambiguous. It does not clearly create two crimes or foreclose the possibility. The Court therefore must apply the "presumption against construing statutes so as to lead to multiple punishment."

*Arreola*, 467 F.3d at 1157 (citation omitted). "When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity[.]" *Bell*, 349 U.S. at 83. The Court holds that § 1591(a)(1) creates a single crime in (a)(1): procuring another to engage in prostitution knowing or having reasons to know either that force, fraud, or coercion will be used or that the person is a minor. Counts Two and Three therefore charge the same offense and are multiplicitous. *United States v. Awad*, 551 F.3d 930, 937 (9th Cir. 2009). In light of this ruling, the government has stated that it will obtain a second superseding indictment that will combine Counts Two and Three into a single count.

## II. Motion to Sever Count One from the Remaining Counts.

Count One charges Defendant with conspiracy to commit sex trafficking by force, fraud, or coercion in violation of 18 U.S.C. § 1594(c). Doc. 63 at 1-6. Counts Two through Seven charge Defendant with sex trafficking and transportation of persons to engage in prostitution in violation of 18 U.S.C. §§ 1591(a), 2421, and 2423. *Id.* at 6-8. Defendant moves to sever Count One from the remaining counts for trial. Doc. 48.

The Court has discretion to grant a severance where "the joinder of offenses . . . for trial appears to prejudice a defendant or the government." Fed. R. Crim. P. 14(a); *United States v. Doe*, 655 F.2d 920, 926 (9th Cir. 1980). The parties disagree on the amount of prejudice that must be shown. The Ninth Circuit has provided this guidance with respect to joinder of defendants, but the Court finds it equally relevant to joinder of claims:

> The general rule is that persons jointly indicted should be jointly tried. To obtain a severance under Fed. R. Crim. P. 14, a defendant must show prejudice. Some prejudice is inherent in any joinder of defendants. If only "some" prejudice is all that need be shown, few multiple defendant trials would be held. Thus, a defendant must show "clear," "manifest," or "undue" prejudice from a joint trial.

*United States v. Smith*, 893 F.2d 1573, 1581 (9th Cir. 1990) (internal citations omitted). Thus, "[s]everance is appropriate under Rule 14 'only if there is a serious risk that a joint

trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" *United States v. Stinson*, 647 F.3d 1196, 1205 (9th Cir. 2011) (quoting *Zafiro v. United States*, 506 U.S. 534, 539 (1993)). Carefully drafted jury instructions can mitigate the risk of prejudice from a joint trial. *Zafiro*, 506 U.S. at 539.

Defendant makes three arguments to justify severance.

First, Defendant claims that a joint trial would be prejudicial with respect to Counts Two through Seven because Count One involves a co-conspirator and many overt acts that are not at issue in the other counts. Doc. 48 at 3-5. But Defendant has identified no specific evidence that would be admissible in a trial of Count One but not in a separate trial of the other counts. Defendant simply argues that many of the overt acts alleged in Count One occurred at different times and in different states than the allegations in Counts Two through Seven. This is true, but all of the overt acts except a few generic allegations concern victims at issue in Counts Two through Seven – Jane Doe 1, R.W., and M.S. *See* Doc. 63 at 3-8. It is quite possible that evidence of the other overt acts alleged in Count One would be admissible in a trial of the other counts to prove that Defendant procured the services of these victims through force, fraud, or coercion – which may have occurred at different times or different locations than Counts Two through Seven – or knew that Jane Doe 1 was under 18 years of age. The Court cannot conclude from Defendant's generic arguments that evidence in support of Count One would necessarily be inadmissible in a trial of Counts Two through Seven. Nor has Defendant shown that adequate jury instructions would not overcome the potential for confusion between the agreement alleged in Count One and the independent acts charged in Counts Two through Seven.

Second, Defendant contends that a joint trial would prejudice his defense to the conspiracy charge in Count One. Doc. 48 at 3-4. Because evidence of an agreement for the conspiracy charge is weak, Defendant argues, the evidence for the remaining counts would improperly bolster the scant support for Count One. *Id.* Again, the Court is not

persuaded. With careful instructions, the jury will understand that Count One requires an agreement with a co-conspirator while the other counts do not. *See* Doc. 50 at 7. The jury will also be instructed that they should determine guilt or innocence on each count separately. What is more, the crimes described in Counts Two, Three, Four, Six, and part of Seven are alleged as overt acts in Count One, and evidence of those acts would be admissible in a trial of Count One. Doc. 63 at 5. And Count Seven alleges the same crime against two victims, one of whom is listed in the overt acts. *Id.* at 5, 7-8. In short, the Court cannot conclude that any significant amount of evidence admissible to prove Counts Two through Seven would be inadmissible in a separate trial of Count One.

Third, Defendant contends that a joint trial would interfere with his right to testify and present separate defenses. Doc. 48 at 5-6. Defendant claims that the weak evidence for the conspiracy's agreement might justify his taking the stand to deny an agreement. *Id.* Defendant notes he is less likely to do so at a joint trial that includes Counts Two through Seven. *Id.* But Defendant does not explain why. As already noted, the acts described in Counts Two through Seven are for the most part reflected in the overt acts of Count One. Cross examination in a separate trial of Count One would likely be almost as broad as cross examination in a trial of Counts Two through Seven.

Defendant also argues that a joint trial would impede his ability to present separate defenses for Count One and Counts Two through Seven. *Id.* Specifically, Defendant notes that his defense to Count One would focus on the insufficient evidence of an agreement, while his defense to the remaining counts would focus on rebutting the substantive allegations. *Id.* But Defendant does not explain, and the Court cannot see, how the presentation of these defenses in a single trial would be inconsistent or prejudicial.

The Court will deny Defendant's motion for a severance under Rule 14, but the Court will issue appropriate jury instructions. "Where the district court uses great diligence in instructing the jury to separate the evidence, severance is unnecessary because the prejudicial effects . . . are neutralized." *Stinson*, 647 F.2d at 1205 (internal

quotation marks omitted). Jurors are presumed to follow instructions. *See Richardson v. Marsh*, 481 U.S. 200, 211 (1987). The Court will entertain any instructions Defendant proposes to reduce prejudice.

**IT IS ORDERED**:

1. Defendant's motion to compel election or dismiss Counts Two and Three (Doc. 44) is **granted**. The government will issue a superseding indictment that cures the multiplicity problem.

2. Defendant's motion to sever Count One from the remaining counts (Doc. 48) is **denied**.

Dated this 2nd day of February, 2018.

_____
David G. Campbell
United States District Judge