1  **WO**

2

3

4

5

6              **IN THE UNITED STATES DISTRICT COURT**

7               **FOR THE DISTRICT OF ARIZONA**

8

9   United States of America,                    No. CR-17-0841-PHX-DGC

10              Plaintiff,                        **ORDER**

11  v.

12  Jonathan Frank Davis,

13              Defendant.

14

15

16       The Court held a final pretrial conference on January 31, 2018. This order will

17  reflect rulings made during the conference.

18       1.    Defendant agreed that his motion to suppress statements made in California

19  is moot. Doc. 47. The government has stated that it will not seek to use those statements

20  during its case in chief.

21       2.    For reasons to be stated in a separate order, the Court concludes that Counts

22  Two and Three of the superseding indictment are multiplicitous. The government has

23  indicated it will seek a superseding indictment that combines the allegations in Counts

24  Two and Three into one count. For reasons to be stated in a separate order, the Court

25  indicated that it will also deny Defendant's motion to sever Count One.

26       3.    Defendant has filed a motion to preclude the government from using his

27  prior criminal convictions for impeachment under Rule 609(a). The Court reviewed the

28  five-factor test set forth in *United States v. Martinez-Martinez*, 369 F.3d 1076, 1088 (9th

Cir. 2004), and concluded that a decision on this issue must await trial. During trial, the Court will be better equipped to evaluate several of the factors set forth in *Martinez*, including the impeachment value of the prior crimes, the importance of the Defendant's testimony, and the centrality of the credibility issue. Defense counsel may raise this issue with the Court before Defendant's decision on whether he will testify. The government agreed that if impeachment by prior convictions is permitted, the only information shared with the jury will be the fact of the prior felony conviction (without identifying the crime), the date of the conviction, and that Defendant was represented by counsel. The Court will decide at trial whether some or all of Defendant's four prior felony convictions should be admitted under Rule 609(a). The Court therefore will **deny** Defendant's motion in limine. Doc. 65.

4. Defendant filed a motion to preclude Detective Christi Decoufle from testifying on certain subjects. During the final pretrial conference, Defendant agreed that a *Daubert* hearing is not necessary, but identified a recent case, *United States v. Wells*, 879 F.3d 900 (9th Cir. 2017), and argued that it applies to several subjects Detective Decoufle will address. Following the conference, the Court read *Wells* and found it relevant to issues that may arise in this case. Because *Wells* was decided by the Ninth Circuit less than two months ago, the Westlaw version lacks page numbers and the Court therefore will cite to the preceding headnote.

The prosecution in *Wells* presented an expert witness on "targeted, intended workplace multiple-homicide violence." *Id.*, Headnote 5. The government explained that the expert was called to "educate" the jury on general principles relevant to the case, as permitted by the 2000 Advisory Committee Note to Rule 702. *Id.* The expert testified about persons who commit multiple murders in the workplace, identifying characteristics of such persons:

> On appeal, Wells summarizes Dr. Meloy's testimony as having constructed the following profile of the perpetrator: male; pathologically narcissistic, with a grandiose view of himself and an unreasonable sense of entitlement; his decision to carry out the murders would be triggered by one or a series

of humiliations in love or work; his narcissistic sensitivity would cause him to be wounded deeply by the criticism; although he may not show it, this wound would serve to formulate a "grievance"; this grievance would convert into anger, which may or may not be expressed openly, and he would begin to fantasize about solving his problems through violence.

*Id.,* Headnote 7.  Although it disclaimed any intent to use profile evidence, the government argued during trial that the defendant met these characteristics.  In closing argument, the prosecutor asserted that the expert's description "fits Mr. Wells to a T." *Id.*

The Ninth Circuit held that the trial court erred in admitting this profile evidence: "Regardless of how broad or narrow Dr. Meloy's findings might have been, the record reflects that his testimony was improperly used by the Government, in conjunction with its overbroad motive theory, to substantively connect the strands of circumstantial evidence in such a way as to fit Wells into the criminal profile." *Id.*, Headnote 8.  "The probative value of Dr. Meloy's testimony is found only in its ability to answer the impermissible question of whether, based on his character profile, Wells acted in accordance therewith on the morning of April 12, 2012." *Id.*, Headnote 12.

The evidence was inadmissible because "Rule 404(a)(1) provides that '[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait.'" *Id.*, Headnote 8 (quoting Fed. R. Evid. 404(a)(1)).  The Ninth Circuit also noted that other jurisdictions have found such profile evidence inadmissible as on grounds of irrelevancy and Rule 403. *Id.*, Headnote 12.  The court held that such evidence is inadmissible as substantive evidence of guilt, but might be permitted as rebuttal evidence if the defendant opens the door by arguing that he does not fit the profile of a person who would commit the charged crime. *Id.*, Headnote 11.

At the final pretrial conference in this case, counsel for the government stated that they have no intention of eliciting profile testimony from Detective Decoufle.  They noted that she will give no opinions about Defendant, but counsel for the government made the same point in *Wells*. *Id.*, Headnote 5 ("The Government confirmed that it

1  intended to have Dr. Meloy describe the characteristics of those who commit 'targeted

2  individual multiple homicide workplace violences,' without discussing Wells personally,

3  because Dr. Meloy had not examined him."). The government also asserted that her

4  testimony will help the jury understand issues related to prostitution beyond the

5  knowledge or experience of the average juror.

6      The Court cannot rule on the admissibility of Detective Decoufle's testimony now;

7  it must hear the questions asked of her and the context in which they are asked. *Wells*

8  teaches, however, that the government may not use her to identify characteristics of

9  persons who prostitute others, with the actual or implied suggestion that Defendant must

10  be guilty because he shares those characteristics. Clearly, however, there is a limit to

11  what *Wells* establishes. There are cases where a particular characteristic of a defendant

12  matches a characteristic of the perpetrator of the crime, and the government may present

13  that evidence and argument to the jury. What the government cannot do under *Wells* is

14  create a profile of a pimp and make the actual or implied suggestion to the jury that

15  Defendant is guilty because he fits the profile.

16      Because the Court cannot determine at this point that Detective Decoufle's

17  testimony should be excluded, it will **deny** Defendant's motion in limine. Doc. 72.[1]

18      5.      Defendant has filed a motion to preclude Jackie Miller, R.N., from giving

19  opinions on the signs and symptoms of strangulation and the difference between

20  strangulation and choking. After conferring with the parties, the Court concluded that

21  Ms. Miller can, subject to any other evidentiary objections, testify about her observations

22  and examination of one of the victims in this case, and can explain conclusions she

23  reached during the examination. In the process, Ms. Miller can explain why, in her

24  report, she characterized the victim's experience as strangulation rather than choking.

25  The Court concludes that this testimony – if expert testimony at all – is within Ms.

26  Miller's expertise as a nurse who conducts examinations of assault victims. The Court

27

28      [1] During the final pretrial conference, the Court also instructed counsel for the government to provide a supplemental notice regarding Detective Decoufle's testimony to defense counsel, on or before February 5, 2018, in compliance with Rule 16(a)(1)(G).

1  will therefore **deny** Defendant's motion.  Doc. 77.  If defense counsel believes that Ms.

2  Miller's testimony ranges beyond her area of expertise, they may object during trial.

3      6.      Defendant has objected to the government presenting evidence of his

4  prostitution of a minor in California, leading to a separate prostitution-related conviction.

5  The government asserts that Defendant's involvement in these California events is

6  admissible under Rule 404(b) as proof of intent, plan, and motive in this case.  Defendant

7  argues that the only relevancy of the events in California – which occurred *after* the

8  events in this case – is to show that Defendant engages in the prostitution of young girls,

9  which is propensity evidence precluded by Rule 404(b).

10      In this circuit, a "court will admit Rule 404(b) evidence if (1) the evidence tends to

11  prove a material point; (2) the prior act is not too remote in time; (3) the evidence is

12  sufficient to support a finding that the defendant committed the other act; and (4) (in

13  cases where knowledge and intent are at issue) the act is similar to the offense charged."

14  *United States v. Verduzco*, 373 F.3d 1022, 1027 (9th Cir. 2004).  Three of these factors

15  are satisfied here:  the events are not remote in time, the government appears to have

16  sufficient evidence of them, and they are similar to the charge in this case – prostitution

17  of a minor.

18      The Court is less certain about whether the first factor is satisfied – whether the

19  evidence tends to prove a material fact without relying on an impermissible propensity

20  inference.  *See United States v. Gomez*, 763 F.3d 845, 861 (7th Cir. 2014) (en banc)

21  ("Because the proponent of the other-act evidence must explain *how* it is relevant to a

22  non-propensity purpose, the government needed a rationale for connecting the cocaine

23  found in Gomez's bedroom to his identity as Guero *without* relying on the forbidden

24  propensity inference.") (emphasis in original).  Because the events in California occurred

25  after the events in this case, the Court doubts that they can be used to prove a material

26  point without relying on Defendant's propensity.  For example, if the government

27  suggests that Defendant's subsequent prostitution of a minor in California shows that he

28  intended to prostitute a minor in this case, the government will appear to be arguing that

- 5 -

Defendant is a person who prostitutes minors – that he has a propensity to prostitute minors – and that the jury should therefore conclude he intended to do so here. The Court has similar concerns with respect to proof of plan or motive. The evidence would seem to suggest that Defendant is a person who prostitutes minors and therefore must have had a plan or motive to do so in this case – an impermissible use of propensity. Despite these doubts, the Court will withhold ruling on this issue until it has a better understanding of the evidence during trial and has heard further arguments from the parties.

The Court is also uncertain whether admission of the California prostitution activities would be appropriate under Rule 403. That decision will depend on the probative value of the California evidence and the danger of unfair prejudice in the context of the trial. The Court will make this decision at trial.

7. The government indicated that information in its bill of particulars applies to all superseding indictments.

8. The Court addressed the government's motion in limine to preclude the defense from presenting evidence of Detective Carpenter's previous disciplinary actions. Although it does not appear likely that the prior disciplinary matters will be relevant, the Court cannot make that determination without hearing the evidence. The Court therefore will deny the motion in limine. Doc. 80. Because mention of prior discipline would be prejudicial, the Court instructed defense counsel to raise this issue outside the hearing of the jury before mentioning it during trial.

9. The Court addressed Defendant's motion for judicial notice of certain evidence regarding California EBT cards. The Court denied the motion with respect to the screenshot offered by defense counsel because it is dated after the events in this case and the Court cannot conclude that it reliably reflects information that was available to participants in this case. The government agreed that defense counsel can ask R.W. if she has seen a pamphlet produced by the State of California regarding EBT cards. If R.W. says yes, defense counsel may move the pamphlet into evidence and the Court will take

judicial notice of the document to the extent necessary to overcome any foundation or hearsay issues.  If R.W. says no, defense counsel indicated that they will move on to other questions.  In light of this discussion, Doc. 98 will be **denied as moot**.

10.    The Court addressed motions regarding evidence of the victims' sexual behavior.    The government has moved to preclude such evidence under Rule 412 (Doc. 99), and the defense has moved to admit it under Rule 412(b)(1)(C).    The Court will address this motion in a separate order**.**

**Dated this 2nd day of February, 2018.**

David G. Campbell
United States District Judge