**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jonathan Frank Davis,<br><br>    Petitioner,<br><br>v.<br><br>United States of America,<br><br>    Respondent. | No. CV-20-01717-PHX-DGC (ESW)<br><br>No. CR-17-00841-PHX-DGC<br>(Related Criminal Case)<br><br>**ORDER** |

Jonathan Davis pled guilty to transporting individuals to engage in prostitution in violation of 18 U.S.C. § 2421 and was sentenced to 78 months in prison and five years of supervised release. CR Docs. 155, 156.[1] He moves to vacate his sentence pursuant to the federal habeas statute, 28 U.S.C. § 2255. Doc. 1. Magistrate Judge Eileen Willett issued a report recommending that the motion be denied without an evidentiary hearing ("R&R"). Doc. 36. Davis filed a response to the R&R and the government responded. Docs. 37, 38. For reasons stated below, the Court will accept the R&R and deny Davis's motion.

**I.      Background.**

Davis was charged in a second superseding indictment with crimes relating to his alleged conspiracy with another individual to recruit one minor female, S.W., and three adult females, R.W., M.S., and B.H., to engage in commercial sex acts in California,

---

[1] Citations to "CR Docs." refer to documents filed in *United States v. Davis*, No. 2:17-cr-00841-DGC-1, the criminal case underlying Davis's § 2255 motion.

1  Nevada, and Arizona. CR Doc. 130. Davis waived his right to a jury trial and the Court
2  set a bench trial for February 12, 2018, at which the government intended to call minor-
3  victim S.W. and adult victim R.W. as witnesses, among others. Doc. 36 at 6. The day
4  before trial, S.W. contradicted many of her prior statements. CR Doc. 149-1 at 1. The
5  morning of trial, S.W. appeared for her testimony and R.W. did not. Doc. 36 at 6. R.W.
6  sent text messages to the government stating that she was "too scared to do this court thing
7  anymore" and that she was not coming to testify. Doc. 1 at 7.

8  That same morning, the government extended a plea offer to Davis, which he
9  accepted. This was the government's fifth plea offer in the case; Davis had rejected four
10 others. Doc. 36 at 6. Davis pled guilty to transporting adult victims B.H. and R.W. from
11 California to Arizona with the intent that they engage in prostitution. CR Doc. 156 at 1, 7.
12 The plea agreement stipulated to a term of imprisonment between 60 and 84 months,
13 followed by five years of supervised release. *Id.* at 3. The Court held a change of plea
14 hearing and found, after a Rule 11 colloquy, that Davis knowingly, intelligently, and
15 voluntarily pled guilty. CR Doc. 178 at 18. The Court accepted Davis's guilty plea and
16 deferred acceptance of the plea agreement until sentencing. *Id.* at 19.

17 During the sentencing hearing on June 14, 2018, the Court and Davis discussed a
18 recent letter Davis had written to the Court stating that he wanted to withdraw his guilty
19 plea. CR Doc. 179 at 2-3. Davis explained that he had concerns about the sentence running
20 consecutively to one he was already serving and about a sex-offender-registration provision
21 requested by the government. *Id.* at 3-4. After consulting with his attorneys during the
22 hearing, Davis elected not to withdraw his guilty plea and continued with the sentencing.
23 *Id.* at 5. The Court accepted the plea agreement and sentenced Davis to 78 months,
24 followed by five years of supervised release. CR Doc. 155 at 1. The Court dismissed the
25 other counts of the superseding indictment, including those related to minor-victim S.W.
26 CR Docs. 155 at 1; 130.

27 On June 26, 2016, Davis filed a notice of appeal. CR Doc. 158. He argued that "the
28 'coercive plea bargaining process' and possibility of receiving a severe sentence if he

proceeded to trial rendered his guilty plea involuntary," and challenged certain conditions of his supervised release. CR Doc. 192-1 at 2; *see also United States v. Davis*, 785 F. App'x 374, 375 (9th Cir. 2019) (mem.). The Ninth Circuit dismissed the appeal, finding that the appeal waiver in his plea agreement was valid and enforceable and that his guilty plea was knowing and voluntary. CR Doc. 192-1 at 3. The Supreme Court denied review. *Davis v. United States*, 141 S. Ct. 178 (2020) (mem.).

## II.     Davis's § 2255 Motion and Judge Willett's R&R.

Davis asserts three grounds for relief in his motion. Ground one argues that his trial attorneys were ineffective in not informing Davis, before he accepted the plea offer, of S.W.'s last-minute changes to her testimony. *Id.* at 3. Ground two asserts that Davis has new evidence not previously seen by the Court – text messages regarding R.W.'s non-appearance on the morning of trial and a letter he wrote to his parents about how S.W.'s changes in her testimony would have affected his plea decision. *Id.* at 3-4. Ground three asserts that the plea bargaining process was "coercive" and that "the possibility of receiving a severe sentence if [he] proceeded to trial rendered [his] guilty plea involuntary." *Id.* at 4.

After briefing of Davis's § 2255 motion had concluded, he requested permission to file a supplement. Doc.32. Judge Willett granted the request and Davis filed additional material. The supplement asserts that the government committed *Brady* violations by failing to disclose R.W.'s unavailability and S.W.'s retractions before he accepted the plea offer. Doc. 34 at 1.

Judge Willett recommends that the Court deny Davis's § 2255 motion without an evidentiary hearing. Doc. 36 at 1. She found that grounds one and two were reviewable but meritless. *Id.* at 7. She detailed responses by Davis's trial attorneys to interrogatories propounded by the government in which the attorneys stated that they did not recall whether they discussed S.W.'s retractions with Davis on the morning of trial, but that they had previously discussed with him, at length, credibility issues with S.W.'s testimony. *Id.* at 8. Judge Willett found that the attorneys' inability to remember did not render their performance deficient or deprive Davis of necessary information. *Id.* at 9. Judge Willett

also noted that Davis's trial attorneys indicated in their interrogatory responses that they advised Davis that the government extended the plea offer *because* R.W. chose not to testify. *Id.* at 8. Judge Willett found that Davis's trial attorneys did not fall below the objective standard of reasonableness by not providing him with a copy of R.W.'s text messages before he accepted the offer. *Id.* Judge Willett further found that Davis did not adequately show how he was prejudiced by not receiving a copy of the messages. *Id.* Judge Willett found that Davis's guilty plea was knowing, intelligent, voluntary, and not the result of ineffective assistance of counsel. *Id.* at 10.

With respect to ground three, Judge Willett noted that Davis asserted on direct appeal that his guilty plea was involuntary as a result of the "coercive plea bargaining process" and "the possibility of receiving a severe sentence" if he went to trial. *Id.* She concluded that because the Ninth Circuit found that Davis's plea was knowing and voluntary, he was precluded from raising the issue again in his § 2255 motion. *Id.*

Judge Willett also recommended that the Court deny the *Brady* claims asserted in Davis's supplement. *Id.* at 12. She assumed the claim was reviewable and found it meritless because Davis's own briefs conceded that the government sent his trial attorneys a copy of S.W.'s witness preparation report the night before trial, and that his attorneys advised him that R.W. would not testify on the morning of trial, demonstrating that the government had timely communicated this fact as well. *Id.* at 11.

### III. R&R Standard of Review.

The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The Court "must review the magistrate judge's findings and recommendations de novo if objection is made, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). The Court is not required to conduct "any review at all . . . of any issue that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

/ / /

- 4 -

## IV. Davis's Response.

Davis filed a response to the R&R rearguing the claims he asserted in grounds one and two of his § 2255 motion and in his supplement. *See* Doc. 37. The government contends that his response does not make any specific objections, noting that much of it is copied verbatim from the R&R and the remaining portions simply reassert arguments Judge Willett considered and rejected. Doc. 38 at 4.

It is true that Davis's response consists mostly of restatements of the R&R and arguments made before Judge Willett, but the Court is mindful of Davis's pro se status and its duty to construe his filings liberally. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). The Court will assume that Davis objects to Judge Willett's findings that he did not show ineffective assistance of counsel in grounds one and two as they relate to minor-victim S.W.

Davis's response does not discuss Judge Willett's findings that his attorneys advised him that the government extended the plea offer because of R.W.'s refusal to testify and that he was not prejudiced by not receiving copies of R.W.'s specific text messages. *See* Doc. 36 at 8. The Court therefore will not review grounds one and two as they relate to R.W. *Thomas*, 474 U.S. at 149.

Nor will the Court review Judge Willett's findings as to ground three. Davis does not mention that ground in his response to the R&R. *Id.*

Davis briefly discusses the *Brady* claims at the end of his response, but not Judge Willett's findings. He argues that the government withheld a copy of the report memorializing S.W.'s retractions when it extended the plea offer (Doc 37 at 10), but the record clearly shows the government sent the report to his attorneys the day before trial. Doc. 35-1 at 2 (email sent at 8:17 PM on February 11, 2018, from government to Davis's attorneys with report detailing S.W.'s changes to her testimony). Indeed, Davis's own filings acknowledge that his attorneys received the report before trial. Doc. 1 at 3 ("[L]ate on the Sunday before trial my defense received an e-mail where the prosecution witness S.W. retracted almost all of the statements against me."); Doc. 37 at 7 (same). The Court

will not address Davis's *Brady* claims given this record and the absence of any argument regarding Judge Willett's findings. *Thomas*, 474 U.S. at 149.

## V. Grounds One and Two Regarding S.W.'s Retractions.

Davis contends that his trial attorneys' statements that they do not recall whether they discussed S.W.'s last-minute changes to her testimony with him "definitely render[ed] trial counsel's performance deficient and [deprived him] of the information necessary to render his plea truly knowing." Doc. 37 at 9. But the fact that Davis's lawyers do not recall whether they discussed the changes with Davis does not show that they did not do so, only that they can't recall. And the Court approaches this argument with some doubt in light of the fact that Davis's two defense attorneys have practiced before the Court for many years and are as diligent and thorough as any attorneys the Court has encountered, ever. The Court nonetheless will consider Davis's arguments carefully.

The two-prong *Strickland* test applies to ineffective-assistance claims arising out of the plea process. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). *Strickland* requires a defendant to show both (1) objectively deficient performance by counsel and (2) resulting prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The first prong requires a showing that counsel's actions related to the guilty plea fell outside the range of competence demanded of attorneys in criminal cases. *Hill*, 474 U.S. at 56. On the second prong, Davis must show a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59. "Judicial scrutiny of counsel's performance must be highly deferential," and there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

The Court may address either of the *Strickland* prongs first, and finds in this case that Davis has not met the high standard required for the prejudice prong. *See id.* at 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged

deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

Davis argues that a letter he sent to his parents shows he would not have pled guilty had he known of S.W.'s retractions. But Davis has not provided the Court with a copy of the letter and the Court cannot locate it in the electronic docket. Davis asserts that the letter can be found in "the file" (Doc. 37 at 8; *see also* Doc. 1 at 3), but he does not say which file or where, and it is not in the Court's docket. On this record, the Court cannot rely on the letter as evidence of prejudice.

Nor does the evidence available to the Court support Davis's assertion that he would have declined the plea offer had he known of S.W.'s changes to her testimony. The record shows that Davis knew of the changes before his sentencing hearing and yet did not cite them as a basis for withdrawing his guilty plea when that topic was discussed at the hearing. Objections to the presentence report filed by Davis's lawyers on May 9, 2018 – more than one month before the sentencing – detailed S.W.'s last-minute changes and attached a copy of the government's report documenting them. CR Docs. 149 at 3, 149-1. This is the same copy of the report that Davis attaches to his supplement in this case. *See* Doc. 34 at 8. And yet at the sentencing hearing on June 14, 2018, when the Court discussed with Davis his letter stating that he wanted to withdraw his guilty plea, Davis made no mention of S.W.'s changes. CR Doc. 179 at 2-5. He focused instead on consecutive sentences and sex offender registration. *Id.* After conferring with his lawyers, Davis retracted his request to withdraw from the guilty plea and affirmed his desire to proceed with sentencing. *Id.* at 5.

Davis argues that his discussions with his lawyers about S.W.'s credibility problems are not relevant to his motion, but the Court disagrees. The premise of Davis's § 2255 argument is that he pled guilty because of the risks he faced if S.W. testified, and yet the record shows that S.W. had severe credibility issues. His lawyers' objections to the presentence report contain this detailed discussion of S.W.'s credibility:

> S.W. gave her first statements about Mr. Davis to law enforcement and a SANE examiner on November 23, 2014, after she was arrested in Scottsdale with Reshay Williams. In her recorded forensic interview with

>Det. Parrott of Scottsdale PD, she described Mr. Davis, who she called "Chris," as her boyfriend and her pimp of six months. She said she was the "bottom bitch" because she had been with him the longest – six months – and she had to bring in $1,500 every night. She said "Chris" was age 19, going on 20. She said she met him in Las Vegas and had been with him since September of 2013 when she got out of jail. She said they talked for six months straight, and he was there when she had her son. She said her "baby daddy" was not with her and so Mr. Davis put his name on her son's birth certificate instead. She said they started dating in July 2014. She said she had known him since high school—that he is from Nevada and they went to school together at Cimarron and Western.
>
>The unreliability of these statements is mostly self-evident, and many of them are contradicted by other witnesses, documents, or S.W. herself. First, Mr. Davis was not age 19 or 20 in November 2014. He was 35 years old. Second, Mr. Davis is not from Nevada, did not go to high school in Nevada, and could not possibly have gone to high school in Nevada with S.W. He is from Florida, and he would have been in high school during the mid-1990s, which is certainly nowhere close to when S.W. was in high school. Third, review of a certified copy of the certificate of livebirth from Nevada for S.W.'s son born in the fall of 2014 shows that Mr. Davis is not listed on the birth certificate—indeed, there is no father listed—which is contrary to S.W.'s claim in her statement to Det. Parrott. Fourth, S.W.'s claims that she had worked for Mr. Davis as a prostitute for six months, was his "bottom bitch," and brought in $1,500 a day are contradicted by other witnesses and, moreover, by S.W. herself. For example, in a July 8, 2015 interview with FBI Task Force Officer and case agent, Det. Carpenter, S.W. stated that she met Mr. Davis in Los Angeles through Reshay Williams. She said she thought she met Mr. Davis in October 2014, and she said she was only with him for three or four weeks before she got locked up down in Arizona.

CR Doc. 149 at 4-5 (citations omitted).

These significant credibility issues were known to Davis and his lawyers before trial and before he accepted the government's plea offer. Given the already questionable nature of S.W.'s testimony, the Court is not persuaded that Davis would have declined the government's plea offer had he known S.W. made additional inconsistent statements shortly before trial. *See* CR Doc. 149-1 (report of S.W.'s pretrial changes).

Finally, as the government notes, Davis did not plead guilty to a crime involving S.W. Doc. 38 at 6. He pled guilty to count 6 of the second superseding indictment, which charged transportation of individuals to engage in prostitution under 18 U.S.C. § 2421. CR Doc. 156 at 1. The factual basis of the plea agreement named only B.H. and R.W., not S.W. *Id.* at 7. All other counts were dismissed, including those related to sex trafficking of a minor. CR Doc. 155.

In conclusion, Davis has not shown prejudice with respect to ground one – the claim that his lawyers failed to advise him of S.W.'s last-minute changes to her testimony. Nor has he shown prejudice with respect to ground two – the "newly discovered evidence" of R.W.'s text messages cancelling her appearance at trial and the unproduced letter to his parents. Davis has not shown a "reasonable probability that, but for counsel's [alleged errors], he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. This is particularly true given the "highly deferential" approach the Court must bring to ineffective assistance claims and the "strong presumption" of Davis's lawyers' competence. *Strickland*, 466 U.S. at 689.

**IT IS ORDERED:**

1. Judge Willett's R&R (Doc. 36) is **accepted**.

2. Davis's § 2255 motion (Doc. 1) is **denied**.

3. Davis has not shown a denial of a constitutional right, and the Court concludes that no reasonable jurist would find that his claims warrant federal habeas relief. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). A certificate of appealability is therefore **denied**.

4. The Clerk of Court is directed to enter judgment accordingly and terminate this action.

Dated this 8th day of August, 2022.

*David G. Campbell*
David G. Campbell
Senior United States District Judge